FILED

AUG 18 2026

CLERK, U.S. DISTRICT COURT
TEXAS EASTERN

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**PLANO DIVISION**

| | | |
|---|---|---|
| **ADEAN HILL JR.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**AMERICAN ONE FINANCIAL INC,** a California Corporation, **FREEDOM DEBT RELIEF LLC,** a Delaware Limited Liability Company, and **MCCARTHY LAW PLC,** an Arizona Professional Limited Liability Company<br><br>**Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Case No.: 4:26CV554-ALM-BD** |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

COMES NOW Adean Hill Jr with his First Amended Complaint and will show as follows:

**PARTIES**

1. Plaintiff ADEAN HILL JR ("Plaintiff") is a natural person, a resident of the Eastern District of Texas, and was present in Texas for all calls, in this case in Collin County, Texas.

2. Defendant AMERICAN ONE FINANCIAL INC ("AOF") is a corporation organized and existing under the laws of California and can be served via registered agent Northwest Registered Agent Inc. at 2108 N. Street, Suite N. Sacramento, CA 95816.

3. Defendant FREEDOM DEBT RELIEF LLC ("FDR") is a limited liability company organized and existing under the laws of Delaware and can be served via registered agent CT Corporation System at 1999 Bryan St., Suite 900, Dallas, TX 75201.

4. Defendant MCCARTHY LAW PLC ("McCarthy") is a professional limited liability company organized and existing under the laws of Arizona and can be served via registered agent and owner Kevin McCarthy 9200 at E Pima Center Parkway, Suite 300, Scottsdale, AZ 85258.

5. AOF, FDR, and McCarthy are collectively hereinafter referred to as "Defendants".

**JURISDICTION AND VENUE**

6. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

7. This Court has specific personal jurisdiction over Defendants because Defendants purposefully availed themselves to the State of Texas and to this District, and there is a sufficient relationship between Defendants' purposeful contacts with Texas and the litigation. Defendants purposefully sent calls into Texas despite having no business relationship with Plaintiff.

a. Defendants target Texas when marketing debt-relief settlement services and regularly conduct business in this District, including telephone solicitation.

b. Defendants purposefully sent phone calls and texts to Plaintiff's Princeton area phone number with area code 972 to generate leads.

c. Defendants directed the calls to be sent into Texas and purposefully directed that Texas residents be targeted with the solicitation of phone calls.

d. The purposeful calls to Texas injured Plaintiff in Texas, creating a causal link among Defendants, the forum, and the litigation exceeding the non-causal affiliation sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

8. Venue. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Eastern District of Texas when he received a substantial if not every single phone call from Defendants which is the subject matter of this lawsuit.

9. This Court has venue over Defendants because the calls at issue were sent by or on behalf of the above-named Defendants to Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

10. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS") or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

12. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes. 47 U.S.C. § 227(b)(1)(B).

13. The TCPA provides a private cause of action to persons who receive calls in violation of

§ 227(b). 47 U.S.C. § 227(b)(3).

14. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

15. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

16. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

17. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

18. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either

section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

19. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

20. A corporate officer involved in telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## THE TEXAS BUSINESS AND COMMERCE CODE § 302.101

21. A seller may not make a telephone solicitation from a location in the state or to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made. Tex. Bus. Com Code § 302.101(a).

22. A person commits an offence if the person knowingly acts as a salesperson on behalf of a seller who violates the registration requirements of this chapter. Tex Bus. Com. Code § 302.252(a).

23. "Telephone call" has the meaning assigned by section 304.002(10) (A-C).

24. "Telephone solicitation" means a telephone call a seller or salesperson initiates to induce a person to purchase, rent, claim, or receive an item." Tex. Bus. & Com. Code. § 302.001(7).

25. An "item" is defined as a property or service. Tex. Bus. & Com. Code. § 302.001 (1).

26. "A person makes a telephone solicitation if the person effects or attempts to effect a telephone solicitation" Tex. Bus. Com. Code. § 302.002

27. A "salesperson" is defined as "A person who is employed or authorized by a seller to makes a telephone solicitation." Tex. Bus. & Com. Code. § 302.001(4).

28. When a telephone solicitation is made and before consummation or any sale transaction, a seller shall provide to each purchaser the complete street address of the location from which the salesperson is calling the purchaser, and if different, the complete street address of the seller's principal location. Tex Bus. & Com Code. § 302.202(1).

29. Federal common law principles of agency apply to TBCC violations...and the conduct of the telemarketer who makes the calls can be imputed to the seller if the telemarketer is an agent of the seller. Guadian v. Progressive Debt Relief, LLC, No. EP-23-cv-235, 2023 WL 7393129, at *4 (W.D. Tex. Nov. 8, 2023); see also Callier v. Tip Top Cap. Inc., No. EP-23-cv-437, 2024 WL 1637535, at *3 (W.D. Tex. Apr. 16, 2024) (holding that a seller violates § 302.101 when a telemarketer makes calls on behalf of a seller who does not hold a registration certificate); Forteza v. Pelican Inv. Holdings Grp., LLC, No. 23-cv-401, 2023 WL 9199001, at *6 (E.D. Tex. Dec. 27, 2023) (same); Salaiz v. Beyond Fin., LLC, No. EP-23-cv-6, 2023 WL 6053742, at *5 (W.D. Tex. Sept. 18, 2023) (refusing to dismiss a § 302.101 claim because "Plaintiff has plausibly alleged that Defendant effected or attempted to effect the thirteen calls Plaintiff received by hiring telemarketers to make those calls.").

30. The Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.

31. The use or employment by any person of a false, misleading, or deceptive act or practice"

causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

## TEXAS BUSINESS AND COMMERCE CODE § 305.053

32. A person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A may bring an action in this state against the person who originates the communication for damages in the amount provided by this section. Tex. Bus. & Com. Code § 305.053(a)(2).

33. A plaintiff who prevails in an action for damages under this section is entitled to the greater $500 for each violation or the plaintiff's actual damages. Tex. Bus. & Com. Code § 305.053(b) (1-2).

34. The fact that a claimant has recovered under a private action arising from a violation of this chapter more than once may not limit recovery in a future legal proceeding in any manner. Tex. Bus. & Com. Code § 305.055.

## TEXAS GOVERNMENT COADE § 82.0651; PROHIBITED BARRATRY

35. Texas law strictly regulates the solicitation of legal services and prohibits attorneys and those acting for their benefit from obtaining legal employment through improper solicitation practices, commonly referred to as barratry.

36. Barratry includes the solicitation of professional employment by an attorney, or by a person acting on an attorney's behalf, through unsolicited telephone contact or through the use of paid intermediaries, runners, or marketing companies to obtain clients. Tex. Gov't Code § 82.0651; Tex. Penal Code § 38.12.

37. Texas Government Code § 82.0651 creates a civil cause of action against any person who commits barratry as defined by Texas Penal Code § 38.12(a) or (b) or Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct.

38. Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct prohibits a lawyer from seeking professional employment through unsolicited in-person or live telephone contact, and further prohibits a lawyer from paying, giving, or offering anything of value to a non-lawyer to solicit employment on the lawyer's behalf.

39. Texas Penal Code § 38.12 likewise prohibits a person from soliciting professional employment for a lawyer with the intent to obtain an economic benefit, including where such solicitation is conducted by a third party or intermediary acting for the lawyer's benefit.

40. Barratry may occur even where the attorney does not personally place the solicitation call, including where non-lawyer intermediaries are used to solicit prospective clients and funnel them into legal representation for the attorney's financial benefit.

41. Texas barratry law regulates the conduct of those engaging in or benefiting from improper solicitation, regardless of the state of residence of the solicited consumer, where the solicitation is directed, managed, or carried out through Texas-based entities or infrastructure.

42. A person who is solicited for legal services by conduct violating Texas Penal Code § 38.12 or Rule 7.03 may bring a civil action under Texas Government Code § 82.0651 against any person who committed the barratry or knowingly benefited from it, whether or not the solicitation resulted in an executed legal-services contract.

43. Under Texas Government Code § 82.0651(c), a person who prevails on a barratry claim is entitled to recover, from each defendant who committed or knowingly benefited from the barratry, a civil penalty of $50,000, in addition to actual damages, reasonable and necessary attorney's fees, and injunctive relief, as authorized by law.

## FACTUAL ALLEGATIONS

44. Plaintiff received one pre-recorded phone call to his phone number ending in -8992.

45. Defendant AOF is a marketing debt consolidation company who solicits on behalf of Defendant FDR.

46. FDR entered into a contractual agreement with AOF that authorized and appointed AOF to solicit the debt relief services of FDR.

47. FDR entered into a contractual agreement with McCarthy that authorized FDR to solicit the legal services of McCarthy.

48. McCarthy supplied FDR with its retainer agreement so that it could embed the retainer into the FDR contract as part of the agreement to appoint and authorize FDR.

49. FDR knew AOF would perform solicitation services via prerecorded messages to consumers who had not authorized or requested such messages.

50. On April 10, 2026, at 12:20 PM, Plaintiff received a pre-recorded message from phone number 254-382-8169 to Plaintiff's telephone number ending in -8992.

51. The pre-recorded message stated,

> "It's Cherry Anderson, today is April 10th, I was hoping you could do me a favor. I have a file here on my desk regarding a loan request we have received from you. I worked up a few loans options for you based on your request. The first, is a retrieval of a same day funding of $15,000 at 5.79% with a payment of $140 dollars. The second is a next-day funding of $42,000 at 7% with a payment of $560 dollars. If you can please set aside just a few minutes, leave me a message and let me know if you'd like me to keep your file active or if you decide to pass on your loan approval. We have been super busy this week or otherwise I would have reached out sooner. But I am available all day to review this with you at 844-387-2137."

52. Plaintiff believes it was a pre-recorded message because he was greeted with a long pause, the voice was robotic in nature, the caller does not interact with Plaintiff at all and lacked a natural human cadence.

53. Plaintiff did not request information or otherwise consent to receive the above prerecorded message.

54. "Cherry Anderson" is a fictitious person designed to give false legitimacy to the unauthorized prerecorded message.

55. None of the Defendants in this case offer loan services.

56. Plaintiff was never solicited for a loan and through information and belief, Defendants never had any intent to provide any type of loan to Plaintiff.

57. On August 16, 2026, Plaintiff searched the Texas Office of Consumer Credit Commissioner website at, https://occc.texas.gov/industry/regulated-lenders, and did not find a valid lending license for any of the Defendants

58. On April 10, 2024, at 12:21 PM, Plaintiff called the number left in the pre-recorded message instructions, 844-387-2137. Plaintiff called the number provided solely for the limited purpose of identifying the parties responsible for the unlawful solicitation.

59. Plaintiff was greeted by an agent identifying himself as "Andy from "Lendy Loans" and continued solicit loan and debt-relief options.

60. "Lendy Loans" is a fictitious name used as part of the bait and switch to give legitimacy to the phone call.

61. Through information and belief "Lendy Loans" is a fictitious name used by AOF as part of a screening process to weed out potential TCPA litigants before later revealing the actual company name. Lendy Loans is not an actual existing company but is instead an alter ego of AOF.

62. "Andy" transferred Plaintiff to a representative who identified herself as "Daisy," who didn't originally or properly state what company she was calling on behalf of. Daisy continued the solicitation and began the enrollment process.

63. Daisy asked Plaintiff about his debts, income, and other debt related metrics.

64. Daisy asked Plaintiff for his date of birth and Social Security number. Plaintiff provided this information as requested. Daisy then soft-pulled Plaintiff's credit report without informing Plaintiff or asking for Plaintiff's permission.

65. Daisy then approved Plaintiff for debt relief services provided by FDR and legal services offered by McCarthy.

66. While still on the phone call with Defendants, Plaintiff received an email at 1:39 PM from enrollments@americanonefinancial.com congratulating him on his approved enrollment with "Freedom Debt Relief (FDR) program!"

67. The email contained a Docusign link. Plaintiff downloaded the agreement but did not sign the agreement.

68. Page forty (40) of the agreement contains the Docusign Certificate that shows the envelope originated from Freedom Debt Relief. Exhibit A.

69. Daisy Reyes was carbon copied on the email via email address daisy@americanonefinancial. *Id.*

70. Through information and belief, Daisy, is the same Daisy identified in paragraph 62.

71. Page thirty-nine (39) of the agreement contained a "Power of Attorney" form Defendant McCarthy Law PLC. Exhibit B.

72. The Power of Attorney states in relevant part,

> "The undersigned, and each of them, hereby appoints McCarthy Law PLC ("Law Firm" as attorney-in-fact to do the acts described in this Power of Attorney. The undersigned, and each of them, hereby appoints Law Firm as attorney-at-law to represent them in court of other legal proceedings…"

73. Upon information and belief, Defendants shared consumer information, coordinated solicitation efforts, and collectively participated in the marketing, intake, enrollment, and servicing process relating to debt-relief services offered to Plaintiff.

74. Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

75. On May 22, 2026, Plaintiff searched the Texas Secretary of State website at https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp and found no telephone solicitation registration for McCarthy.

76. No emergency necessitated the calls.

**ATTORNEY DEBT REPRESENATION SOLICITATION INDUSTRY**

77. Attorneys are widely prohibited from cold call solicitating consumers and prospective customers who have no preexisting relationship.

78. It is becoming increasingly commonplace for attorneys to hire third-party marketing firms to make the cold calls on behalf of attorneys and law firms.

79. Attorneys and law firms enter into contracts that explicitly authorize third parties to solicit their legal representation services.

80. Attorneys and law firms supply the third-party telemarketers with their retainer and/or representation agreements as part of the process of engaging and authorizing the telemarketers to solicit their legal services.

81. Attorneys and law firms create what is in essence an escrow account to which the telemarketer has access. The attorneys and law firms deposit a standard $50,000 into the account. The telemarketer then draws a referral fee out of the account upon each successful referral to the attorney or law firm.

82. The attorney and law firms that are increasingly hiring telemarketers are distinctly aware their telemarketers with whom they enter into solicitation contracts, open escrow accounts, and deposit money with, will be performing solicitation services on their behalf.

## LIABILITY UNDER TEXAS BUSINESS AND COMMERCE CODE 302

83. Texas Business and Commerce Code Chapter 302 does not require the seller to have an agency relationship with the salesperson in order to impose liability upon the seller for calls made by the salesperson.

84. The clear language of the statute states, "a person makes a telephone solicitation if the person effects or attempts to effect a telephone solicitation". Tex. Bus. Com. Code § 302.302.

85. "Telephone call" has the meaning assigned by Section 304.002(10)(A-C).

86. "Telephone solicitation" means a telephone call a seller or salesperson initiates to induce a person to purchase, rent, claim, or receive an item. Tex. Bus. Com. Code § 302.001(7).

87. "**Salesperson**" means a person who is **employed**[1] or **authorized**[2] by a seller to make a telephone solicitation. Tex. Bus. Com. Code § 302.001(4) (bold emphasis added).

88. "Seller" means a person who makes a telephone solicitation on the person's own behalf. Tex. Bus. Com. Code § 302.001(5).

## FDR ACTED AS A SALESPERSON FOR MCCARTHY

89. McCarthy was the "seller" of their legal services.

90. McCarthy supplied FDR with its retainer agreement with

91. AOF acted as the agent of FDR. FDR acted as the agent of McCarthy.

92. McCarthy made the telephone solicitation call on its own behalf when it hired and authorized FDR to solicit its legal services, and FDR in turn, hired AOF to place the solicitation

---

[1] "**Employ**, vb. **1.** To make use of. **2.** To hire. **3.** To use as an agent or substitute in transacting business. **4.** To commission and entrust with the performance of certain acts or functions…." Garner, **Black's Law Dictionary**, p. 602 (Ninth Ed.)

[2] "**Authorize**, vb. **1.** To give legal authority; to empower <he authorized the employee to act for him>. **2.** To formally approve; to sanction <the city authorized the construction project>. – authorization, n." Garner, **Black's Law Dictionary**. p. 153 (Ninth Ed.)

phone call.

93. To the extent that McCarthy may argue that it did not make the phone call, the question concerning liability under Texas Business and Commerce Code § 302.101 is not whether McCarthy had control over, or an agency relationship with FDR, but rather, whether FDR was authorized to solicit McCarthy's legal services.

94. The clear language of the statute places liability on the seller for phone calls made by salespersons who are employed or authorized by the seller to make telephone solicitations.

95. It would be implausible for McCarthy to argue that the salespersons [FDR] who solicited Plaintiff were not authorized to sell McCarthy's services.

96. McCarthy provided FDR with its retainer agreement. FDR embedded that retainer agreement into the FDR debt contract. FDR then provided that retainer to Plaintiff.

97. McCarthy clearly authorized FDR to solicit its legal services, and McCarthy knew, or should have known, those solicitations would occur via unauthorized prerecorded messages

**VICARIOUS LIABLITY OF FDR FOR PHONE CALLS PLACED BY AOF**

98. Defendant FDR is "vicariously liable" under federal common law principles of agency for TCPA violations committed by third-party telemarketers," such as Defendant AOF. In *re Joint Pet. filed by Dish Network, LLC,* 28 F.C.C.R. 6574, 6582 (2013).

99. FDR markets debt-relief settlement legal representation through direct telephone solicitation by their hired telemarketer AOF, who acts on their behalf.

100. AOF screens potential clients for FDR based on criteria set forth by FDR.

101. FDR set the criteria for qualifying leads with AOF must follow. AOF transfers leads exclusively to FDR. Plaintiff is unaware of the qualifying thresholds, but the salient questions are the potential client's credit score, current debts, monthly income, and bankruptcy status.

102. FDR wrote or at least approved the call script the AOF used when qualifying Plaintiff for FDR's debt relief services.

103. FDR instructed AOF on what states to solicit.

104. FDR controlled the timing, frequency, and volume of the phone calls placed by AOF to ensure that FDR would have telephone agents available to receive the transfers made by AOF.

105. FDR maintained interim control over AOF by controlling how and under what circumstances they would accept clients from them.

106. AOF is FDR's agent and does nothing to disturb the impression that they work for and speak and act on behalf of FDR.

107. From AOF's initial call through FDR's acceptance of a live transfer, the telemarketing constitutes a singular, coordinated marketing effort devised, authorized, directed, and controlled by FDR, the principal, with AOF acting as FDR's agent.

108. AOF, acting with actual and implied authority, made prohibited calls, and qualified Plaintiff according to FDR's criteria.

109. FDR hired AOF and instructed AOF to make solicitation phone calls utilizing prerecorded messages.

**FDR AND MCCARTHY COMMITTED BARRATRY VIOLATIONS**

110. Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct prohibits a lawyer from seeking professional employment through unsolicited in-person or live telephone contact, and further prohibits a lawyer from paying, giving, or offering anything of value to a non-lawyer to solicit employment on the lawyer's behalf.

111. Barratry may occur even where the attorney does not personally place the solicitation call, including where non-lawyer intermediaries are used to solicit prospective clients and funnel

them into legal representation for the attorney's financial benefit.

112. McCarthy entered into a written agreement with FDR that empowered FDR to solicit McCarthy's legal services for financial gain.

113. Both FDR and McCarthy benefited from this agreement. FDR received commissions from McCarthy for enrolling new clients with McCarthy and McCarthy received payments from the clients enrolled by FDR.

114. FDR solicited the legal services of McCarthy for financial gain during April 10, 2026, phone call with Plaintiff.

115. FDR emailed Plaintiff a retainer agreement to hire McCarthy while still on the phone during the April 10, 2026, phone call. Exhibit B.

116. Plaintiff did not have a preexisting relationship with either FDR or McCarthy prior to the initiation of the phone call at issue in this Instant Action.

117. Plaintiff never sought the legal services of either FDR or McCarthy.

**INJURY, HARM, AND DAMAGES AS A RESULT OF THE CALLS**

118. Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy.

119. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

120. Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

121. Plaintiff has been harmed, injured, and damaged by the calls, including, but not limited to: reduced device storage space, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone.

122. Plaintiff incurred increased electric bills as a result of more frequent charging of his cell

phone related to the unauthorized phone call.

**COUNT ONE:**
**Non-Emergency Prerecorded Call to Cellular Telephones, 47 U.S.C. 227(b)(1)(A)**
**(Against AOF and FDR)**

123. Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1-122.

124. The foregoing acts and omissions of Defendants AOF and FDR constitute a violation of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing pre-recorded calls to Plaintiff's cellular telephone numbers without his prior express written consent.

125. Plaintiff was statutorily damaged at least one (1) time under 47 U.S.C § 227(b)(3)(B) by Defendants AOF and FDR by the telephone calls described above, in the amount of $500.00 per call.

126. Plaintiff was further statutorily damaged because Defendants AOF and FDR willfully or knowingly violated this subsection of the TCPA, Plaintiff requests that the court treble the damages amount as permitted under U.S.C. § 227(b)(3)(C) for this willful or knowing violation.

**COUNT TWO:**
**Violated Texas Business and Commerce Code 305.053- Pursuant to 47 U.S.C. § 227(b)**
**(Against AOF and FDR)**

127. Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1-126.

128. Defendant placed a pre-recorded message to Plaintiff's cellular phone in violation of 47 U.S.C. § 227(b)(1)(A).

129. A person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A may bring an action in this state against the person who originates the communication for damages in the amount provided by this section. Tex. Bus.

& Com. Code § 305.053(a)(2).

130. A plaintiff who prevails in an action for damages under this section is entitled to the greater of $500 for each violation or the plaintiff's actual damages. Tex. Bus. & Com. Code § 305.053(b)(1-2).

131. If the court finds that AOF and FDR committed the violation knowingly or intentionally, the court may increase the amount of the award of damage under Subsection (b) to not more than the greater of $1,500 for each violation or three times the Plaintiff's actual damages. Tex. Bus. & Com. Code § 305.053(c)(1-2).

132. The fact that a claimant has recovered under a private action arising from a violation of this chapter more than once may not limit recovery in a future legal proceeding in any manner. Tex. Bus. & Com. Code § 305.055.

**COUNT THREE:**
**Violations of Texas Business Commerce Code 302.101**
**(Failure to Obtain a Telephone Solicitation Registration Certificate)**
**(Against McCarthy)**

133. Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1-132.

134. The foregoing acts and omissions of Defendant McCarthy and/or their affiliates or agents constitute violations of the Texas Business and Commerce Code 302.101, by making one (1) nonregistered solicitation call to Plaintiff's cellular telephone number without his prior express written consent.

135. Plaintiff is entitled to an award of up to $5,000 in damages for each of one (1) such violation. Texas Business and Commerce Code 302.302(a).

136. Plaintiff is entitled to an award of all reasonable costs of prosecuting the action, including court costs, investigation costs, deposition expenses, witness fees, and attorney's fees. Texas

Business and Commerce Code 302.302(d).

**COUNT FOUR:**
**Violations of Texas Business Commerce Code 302.202(1)**
**(Failure to Disclose Location)**
**(Against McCarthy)**

137. Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1-136.

138. The foregoing acts and omissions of Defendant McCarthy and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 302.202, by making one (1) nonregistered solicitation call to Plaintiff's cellular telephone number without disclosing the address from where the solicitation phone calls had been placed.

139. Plaintiff is entitled to an award of up to $5,000 in damages for each of one (1) such violations. Texas Business and Commerce Code 302.302(a).

140. The fact that a claimant has recovered under a private action arising from a violation of this chapter more than once may not limit recovery in a future legal proceeding in any manner. Tex. Bus. & Com. Code § 305.055.

**COUNT FIVE:**
**Violation of 82.0651 Civil Liability for Prohibited Barratry**
**(Against Defendants FDR and McCarthy)**

141. Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1-140.

142. Barratry is the solicitation of employment to prosecute or defend a claim with the intent to obtain a personal benefit. *State Bar of Tex. V. Kilpatrick*, 874 S. W.2d 656, 658 n.2 (Tex.1994).

143. Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct, entitled "Prohibited

Solicitations and Payments.

144. Rule 7.03 provides, in relevant part, as follows:

> (a) A lawyer shall not by in-person contact, or by regulated telephone or other electronic contact as defined in paragraph (f) seek professional employment concerning a matter arising out of a particular occurrence or event, or series of occurrences or events, from a prospective client or nonclient who has not sought the lawyer's advice regarding employment or with whom the lawyer has no family or past or present attorney-client relationship when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain…
>
> (b) As used in paragraph (a), "regulated telephone or other electronic contact" means any electronic communication initiated by a lawyer or by any person acting on behalf of a lawyer or law firm that will result in the person contacted communicating in a live, 18 interactive manner with any other person by telephone or other electronic means. Id. R. 7.03(a), (as used in paragraph (a), "regulated telephone or other electronic contact" means any electronic communication initiated by a lawyer or by any person acting on behalf of a lawyer or law firm that will result in the person contacted communicating in a live, interactive manner with any other person by telephone or other electronic means. Id. R. 7.03(a), (f)

145. A lawyer shall not send, or deliver, or knowingly cause another person to send, deliver, or transmit, a communication that involves coercion, duress, overreaching, intimidation, or undue influence.

146. Plaintiff did not initiate communication with Defendants McCarthy and FDR.

147. Plaintiff was targeted by McCarthy and FDR despite not having a preexisting relationship with Defendants.

148. Defendants McCarthy and FDR's conduct violated at least Section 38.12(b) of the Penal Code and Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct.

149. Plaintiff was solicited by FDR so that McCarthy and FDR would benefit financially.

150. McCarthy and FDR knew or should have known that its telephone solicitation was in violation of Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct and Section 38.12(b) of the Texas Penal Code.

151. McCarthy violated Texas Penal Code to § 38.12 when it solicited employment for itself by telephone to obtain economic benefit. Penal Code 38.12(a)(2) Barratry and Solicitation of Professional Employment.

152. McCarthy violated Texas Penal Code § 38.12 when it with intent to obtain professional employment used misleading, deceptive, and false claims. Penal Code 38.12(d)(1)(2) (E-F) Barratry and Solicitation of Professional Employment.

153. A person who was solicited by conduct violating Section 38.12 (Barratry and Solicitation of Professional Employment) (a) or (b), Penal Code, or Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas, regarding barratry by attorneys or other persons, but who did not enter into a contract as a result of that conduct, may file a civil action against any person who committed barratry.

154. A person who prevails under Subsection (c) shall recover from each person who engaged in barratry: (1) A penalty in the amount of $50,000; (2) actual damages caused by the prohibited conduct; and (3) reasonable and necessary attorney's fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Adean Hill Jr. prays for judgment against the Defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the Telephone Consumer Protection Act ("TCPA"), Texas Business and Commerce Code ("TBCC"), and Texas Government Code ("TGC");

C. An award of $1,500 per call in statutory damages arising from the TCPA §227(b) intentional knowing and willful violations against Defendants AOF and FDR for one (1) call.

D. An award of $1,500 per call in statutory damages arising from the TBCC 305.053 intentional knowing and willful violations against Defendants AOF and FDR for one (1) call.

E. An award of $5,000 per call in statutory damages arising from violations of the TBCC 302.101 against Defendant McCarthy for one (1) call;

F. An award of $5,000 per call in statutory damages arising from violations of the TBCC 302.202 against Defendant McCarthy for one (1) call;

G. An award of $50,000 against Defendant FDR in statutory damages arising from violations of Prohibited Barratry TGC 82.0651;

H. An award of $50,000 against Defendant McCarthy in statutory damages arising from violations of Prohibited Barratry TGC 82.0651;

I. Such further relief as the Court deems necessary, just, and proper.

J. An award to Plaintiff of damages, as allowed by law under the TCPA;

K. An award to Plaintiff of damages, as allowed by law under the TBCC;

L. An award to Plaintiff of damages, as allowed by law under the TGC;

M. An award to Plaintiff of interest, costs, and attorneys' fees, as allowed by law and equity;

N. An award to Plaintiff of interest, costs, and attorneys' fees, as allowed by law and equity;

Such further relief as the Court deems necessary, just, and proper.

August 18, 2026,

Respectfully submitted,

*/s/ Adean Hill*
Adean Hill Jr
Plaintiff, Pro Se
910 Spruce Ln
Princeton, TX 75407
469-309-6920
Adeanhill799@gmail.com